IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT CARL HALL                        *

v.                                       *         Civil Action No. CCB-13-3766

UNITED STATES OF AMERICA                *

                                         *
                                        ***

## MEMORANDUM

Pending before the court is the defendant's motion to dismiss or for summary judgment, (ECF No. 9), which is unopposed by plaintiff Robert Carl Hall.[1] A hearing in this matter is unnecessary. *See* Local R. 105.6. For the reasons set forth below, the defendant's motion, construed as a motion for summary judgment, shall be granted. Hall's motion for service of process, (ECF No. 3), shall be denied as moot.

## BACKGROUND

Hall is a prisoner incarcerated in the Eastern Pre-Release Unit in Church Hill, Maryland. He filed the instant complaint pursuant to the Federal Tort Claims Act ("FTCA"), alleging the U.S. Department of State improperly denied his application for a passport. (Compl., ECF No. 1, at 1, 4.) He states that "[a]t all relevant times" he has been an unwitting participant in a secret ongoing federal "real world human testing program (HTP)" and that the federal government contracted with Johns Hopkins University and the University of Maryland Medical Systems to carry out the program. (*Id*. at 4.)

Hall claims that, on April 7, 1999, he was ordered by the Circuit Court for Harford County to undergo a competency evaluation at Spring Grove Hospital "as a part of the research." (*Id.* at 5.) He was found to be incompetent and suffering from "a DSMIV defined mental

---

[1] Hall was advised of his right to file an opposition response and of the consequences of failing to do so. (*See* Rule 12/56 Letter, ECF No. 10.)

disorder." (*Id.*) He claims that, when he was released from Spring Grove, he was provided with thirty days of medication, but his personal property, including his passport, was kept by the Harford County Sheriff's Office between June 7, 1998, and April 7, 1999. (*Id.*) He further claims that unknown HTP agents invoked an official policy to obtain possession of his passport, and that they then destroyed it. (*Id.*)

On April 18, 1999, Hall submitted an application for a replacement passport, together with the required fee. (*Id.*) He claims that the U.S. Passport Authority issued a new passport on May 18, 1999, but placed a hold on sending the passport to him at the request of the U.S. Department of Defense ("DOD"). (*Id.* at 6.) From May 18, 1999, through at least December 9, 2013, the Passport Authority and the State Department have refused to remove the hold and release his passport or to refund the fee paid for it. (*Id.*) Hall claims that he became aware his passport would not be released and the fee would not be refunded on September 10, 2012, at which time he filed an FTCA claim. (*Id.*) The claim was denied by the State Department on June 21, 2013. (*Id.*) He now seeks the $65 passport fee plus $1000 in "recovery costs." (*Id.* at 7.)

The defendant provides additional facts, which Hall does not dispute. State Department records reflect that Hall filed an application for a passport in April 2000, together with a form dated April 10, 2000, and captioned "Statement Regarding Lost or Stolen Passport." (Def.'s Mot., ECF No. 9-1, at 2.) In the form, he alleged his passport was taken from him when he was in custody at the Harford County Detention Center. (*Id.*)

In a letter dated July 15, 2000, Hall contacted the State Department in an apparent effort to inquire about the status of his passport application. (ECF No. 9-2, Ex. 1.) Hall again wrote to the State Department on March 30, 2001, inquiring once more about the status of his passport and asking for his money to be returned if the passport application had been denied. (ECF No. 9-

3, Ex. 2.) The State Department could not locate any further records indicating that Hall attempted to learn the status of his application after his March 30, 2001, letter. (Def.'s Mot. at 2.)

The defendant indicates that Hall's application for a passport was not ignored but rather was investigated because aspects of the application seemed fraudulent. (*Id.* at 3.) The investigation began in May 2000 and was closed in March 2002, when it was determined there was insufficient evidence of fraud. No final action was taken on the application until the instant case brought about further review, and a denial letter, based on Hall's incarceration, was issued on March 5, 2014. (*Id.*; *see also* ECF No. 9-4, Ex. 3.)[2]

## STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also*

---

[2] Hall was advised of his right to appeal the denial, and that passport fees are not refundable under federal regulations. (*See* ECF No. 9-4, Ex. 3.)

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

## ANALYSIS

### FTCA Claim

Under the FTCA, the United States may be liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). As a waiver of sovereign immunity, the FTCA is to be narrowly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). Immunity is not waived for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Before a claim under the FTCA may be considered by this court, a plaintiff must file an administrative claim with the appropriate agency. It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived. *See Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976). The time requirements for filing an administrative claim and commencing a civil suit are set forth in 28 U.S.C. § 2401(b), which states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*Id*.

4

Hall asserts in his complaint that he was found to be mentally incompetent in April 1999, and that he renewed his efforts to learn about the status of his application in May of the same year. To the extent he is asserting that a mental infirmity prevented his compliance with the filing deadlines required in the FTCA, the undisputed facts do not support his assertion. The evidence submitted by the defendant, uncontested by Hall, establishes that he knew about the issue regarding his passport application in 2000, but waited nearly twelve years before presenting a claim to the State Department on September 12, 2012. (*See* ECF No. 9-5, Ex. 4.) Thus, his claim appears to be time barred.

Notwithstanding the untimely filing of the instant complaint, Hall does not state a claim under the FTCA. The Act permits a claim "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Thus, the relevant inquiry is whether the alleged tortious conduct of the government would give rise to a cause of action against an individual if that individual engaged in the same conduct. *See Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995).

The court cannot discern—and Hall does not offer—any cause of action by which a private individual may be held liable for the alleged conduct. *Cf. Keil v. Spinella*, No. 09-3417-CV-S-RED, 2011 WL 43491, at *4–5 (W.D. Mo. Jan. 6, 2011) (claim that passport was improperly seized has no analogous private cause of action and is not actionable under the FTCA); *Figueroa v. United States*, 739 F. Supp. 2d 138, 142 (E.D.N.Y. 2010) (alleged negligent issuance of a passport lacks private analog and cannot form the basis for an FTCA claim). Where

there is no private party analog to the claim asserted against the government, sovereign immunity is not waived, and the FTCA claim is barred. Thus, Hall's FTCA claim fails.

### Constitutional Claim

Hall alleges that the failure to return the application fee was a seizure of his property by the government without just compensation in violation of his Fifth Amendment rights. The United States is absolutely immune from suit, except as specifically provided by Congress, and waivers of immunity must be strictly construed. *See United States v. Testan*, 424 U.S. 392, 399 (1976). If Congress has not consented to a cause of action against the United States, this court has no jurisdiction to entertain the claim. *See United States v. Sherwood*, 312 U.S. 584, 587–88 (1941). There is no basis in the instant case to find such a waiver for Hall's constitutional claim. *See, e.g.*, *Radin v. United States*, 699 F.2d 681, 685 (4th Cir. 1983) (constitutional claim against federal government for conduct of individual federal agency and employees is barred by sovereign immunity). The constitutional claim, therefore, also fails.

A separate order granting summary judgment in favor of the defendant follows.


<u>May 23, 2014</u>                               <u>         /s/                         </u>
Date                                                    Catherine C. Blake
                                                        United States District Judge